# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By cramirez at 3:58 pm, Feb 07, 2011

In the matter of:                    )
                                     )        Adversary Proceeding
BRIAN H. CORLEY                      )
MISTY S. CORLEY                      )        Number <u>10-4033</u>
(Chapter 7 Case Number <u>10-40181</u>)  )
                                     )
                                     )
                    *Debtors*        )
                                     )
                                     )
                                     )
                                     )
JAMES L. DRAKE, JR.,                 )
TRUSTEE                              )
                                     )
                                     )
                    *Plaintiff*      )
                                     )
                                     )
                                     )
v.                                   )
                                     )
                                     )
CITIZENS BANK OF EFFINGHAM,          )
OCWEN LOAN SERVICING, LLC,           )
Successor in Interest to TAYLOR BEAN )
& WHITAKER MORTGAGE                  )
CORPORATION, and                     )
MORTGAGE ELECTRONIC                  )
REGISTRATION SYSTEMS, INC.,          )
Individually and as Nominee for      )
Citizens Bank of Effingham           )
                                     )
                    *Defendants*     )
                                     )

## MEMORANDUM AND ORDER

Debtors purchased real property in 2006. To complete the transaction, they

borrowed the purchase money from Citizen's Bank of Effingham ("CBE"), executed a

AO 72A
(Rev. 8/82)

promissory note for the borrowed amount (the "Note"), and executed a deed to secure debt as security for that loan (the "Security Deed"). The Security Deed named Mortgage Electronic Registration Systems, Inc. ("MERS")[1] as grantee and nominee for CBE and its successors. The Note was transferred multiple times, with different entities taking possession, ownership, and servicing rights at different times. Ownership and possession of the Security Deed were transferred at least once. When Debtors filed Chapter 7, the Trustee commenced an adversary proceeding to determine the extent, validity, and priority of the Security Deed, asserting that the Note was unsecured. The Defendants have moved for summary judgment, alleging that there is no genuine issue of material fact, and that the Note remains secured by the real property. Based on the evidence and applicable authorities I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On November 22, 2006, Debtors executed the Note in favor of CBE in exchange for a loan in the amount of $158,250.00. Defendant's Facts, Dckt. No. 30, ¶ 1; Plaintiff's Response, Dckt. No. 38, ¶ 1. The Note was secured by real property known as 132

---

[1]According to William Hultman, Treasurer of MERS, "MERS was created by the banking industry to streamline the mortgage transfer process by using electronic commerce to eliminate paper. . . . Mortgage lenders, banks, insurance companies, and title companies pay an annual fee to become members of MERS. MERS members contractually agree to appoint MERS to act as their common agent, or nominee, and to name MERS as the mortgagee of record (or grantee on a deed of trust or security deed) in a nominee capacity on all recorded security instruments for loans registered on the MERS System. Once MERS becomes the mortgagee of record (or grantee on a deed of trust or security deed), it remains such even when beneficial ownership interests in the promissory note or servicing rights are transferred. MERS members electronically track the transfer of beneficial ownership interests and servicing rights of MERS registered loans on the MERS System are tracked electronically in the MERS System. As long as the transfer of beneficial ownership interests or servicing rights involves a MERS member, MERS remains the mortgagee and continues to act as nominee for the new note-holder-servicer." Hultman Affidavit, Dckt. No. 28-3, ¶¶ 5-9.

✎AO 72A
(Rev. 8/82)

Huger Street, Rincon, Georgia, 31326 (the "Property"). Id. At the closing, Debtors executed the Security Deed, naming Debtors as "Borrowers" and "Grantors," CBE as "Lender," and MERS as "Grantee." Defendant's Reply, Dckt. No. 44, ¶ 2; Plaintiff's Response, Dckt. No. 38, ¶ 2. The Security Deed further provided that MERS would act as "nominee for Lender and Lender's successors and assigns." Defendant's Facts, Dckt. No. 30, ¶ 3; Plaintiff's Response, Dckt. No. 38, ¶ 3. The Security Deed specifically identifies the Note by borrower, property, date, and amount, and it provides that the Property is collateral for the Note. Security Deed, Dckt. No. 28-1, exhibit 2 thereto.

A.  The Note

The Note was executed in favor of CBE, and CBE took possession of the Note at the time of the execution. Defendant's Facts, Dckt. No. 30, ¶ 2; Plaintiff's Response, Dckt. No. 38, ¶ 2. MERS had entered into a Third Party Originator ("TPO") agreement with Taylor, Bean, & Whitaker Mortgage Corp. ("TBW"), giving TBW the ability to partner with institutions (that were not members of the MERS system) to originate loans for TBW under the MERS system. Hultman Affidavit, Dckt. No. 28-3, ¶ 10; TPO Agreement, Dckt. No. 28-3, exhibit 2 thereto. CBE originated the Note, but assigned all its rights and interests in the Note to TBW. Transfer Letter, Dckt. No. 28-1, exhibit 4 thereto. TBW took possession of the Note, and indorsed the Note (pursuant to a power of attorney) from CBE to TBW. Note, Dckt. No. 28-2; Defendant's Facts, Dckt. No. 30, ¶¶ 10, 11; Power of Attorney, Dckt. No. 28-1, exhibit 9 thereto. TBW then indorsed the Note in blank. Note, Dckt. No. 28-2;

Defendant's Facts, Dckt. No. 30, ¶ 12; Plaintiff's Response, Dckt. No. 38, ¶ 12.  Such an indorsement is consistent with Federal Home Loan Mortgage Corporation ("Freddie Mac") requirements.  Defendant's Facts, Dckt. No. 30, ¶ 13; Plaintiff's Response, Dckt. No. 38, ¶ 13.[2]  On or about January 11, 2007, Freddie Mac became the record owner of the Note, and TBW remained the servicer of the loan.  Defendant's Facts, Dckt. No. 30, ¶¶ 16, 17; Meyer Affidavit, Dckt. No. 28-5, ¶ 6.

On August 4, 2009, Freddie Mac terminated TBW's status as an approved Freddie Mac servicer.  Defendant's Facts, Dckt. No. 30, ¶ 20; Plaintiff's Response, Dckt. No. 38, ¶ 20.  Thereafter, in August of 2009, the servicing rights were transferred to Ocwen Loan Servicing, LLC ("Ocwen").[3]  Defendant's Facts, Dckt. No. 30, ¶¶ 21, 22; Plaintiff's Response, Dckt. No. 38, ¶¶ 21, 22.

## B.  The Security Deed

On November 22, 2006, Debtors executed the Security Deed, naming MERS as "grantee under this Security [Deed]" and as "nominee for Lender and Lender's successors and assigns."  Security Deed, Dckt. No. 28-1, exhibit 2 thereto, pp. 1, 3.  The Security Deed granted MERS the power of sale, and "the right to exercise any or all of [Lender's, and

---

[2] I note that while Plaintiff's response disputes many of Defendants' proposed facts, the issues raised are either immaterial or unfounded, leaving no "genuine issue of material fact."  See Defendant's Reply, Dckt. No. 44. I take this opportunity to acknowledge receipt of the Trustee's Surreply, Dckt. No. 46, and Surreply, Dckt. No. 47. The arguments raised therein do not change my analysis.

[3] The record contains references to the identity of the custodian(s) who were in actual physical possession of the documents from time to time.  I have not referenced that line of custody because the identity of a mere custodian, as contrasted with the owner or servicer, is irrelevant to the secured status of this obligation.

AO 72A
(Rev. 8/82)

Lender's successors and assigns'] interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security [Deed]." Id. at p. 3. The Security Deed was recorded in the Office of the Clerk of Superior Court of Effingham County on November 28, 2006. Defendant's Facts, Dckt. No. 30, ¶ 5; Plaintiff's Response, Dckt. No. 38, ¶ 5. The Security Deed specifically contemplates that the Note may be sold "together with this Security [Deed]" more than once. Security Deed, Dckt. No. 28-1, exhibit 2 thereto, ¶ 20. The Security Deed was transferred to Ocwen on or about April 29, 2010. Defendant's Facts, Dckt. No. 30, ¶ 32; Plaintiff's Response, Dckt. No. 38, ¶ 32.

## C.  The Note and Security Deed Together

The Note and Security Deed were executed together in favor of CBE and MERS (respectively) at the inception of the loan.  The Security Deed specifically identifies the Note by borrower, property, date, and amount, and provides that it is granted to secure payment on the Note.  The Note was sold and transferred multiple times, eventually ending up in the possession of Ocwen.  MERS, as nominee for CBE and its assigns, remained the Grantee under the Security Deed until MERS transferred the Security Deed to Ocwen.  At that time, the Note and the Security Deed were physically united.

The transfer of the Security Deed from MERS to Ocwen occurred on April 29, 2009, almost three months after Debtors filed their Chapter 7.  The Trustee now alleges

that the Note is unsecured because at some point at or after the inception of the loan, the Note and Security Deed were "split," and that the post-petition transfer of the Note and the Security Deed violated the automatic stay.

## CONCLUSIONS OF LAW

### Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 (Summary Judgment) applicable in adversary proceedings such as this one. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *See* Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (applying a linguistically different, but substantively identical legal standard). The moving party has the burden of demonstrating that there is no dispute as to any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 156 (1970).

> Once this burden is met, the nonmoving party must present specific facts that demonstrate that there is a genuine dispute over material facts. Finally, a court reviewing a motion for summary judgment must examine the evidence in light most favorable to the non-moving party, and all reasonable doubts and inferences should be resolved in the favor of the non-moving party.

In re Williamson, 414 B.R. 895, 899 (Bankr. S.D. Ga. 2009) (Davis, J.) (citing In re Davis,

%AO 72A
(Rev. 8/82)

374 B.R. 362, 364 (Bankr. S.D. Ga. 2006) (Davis, J.)).

<u>The Note is Fully Secured</u>

   I hold that the Note is fully secured.  I reach this conclusion for the following reasons:

I)  The Note was secured by the Security Deed, which was properly perfected at its inception and was never released or cancelled.

II)  When the Note and Security Deed were physically separated, there was neither contractual language nor any statutory provision which stripped the security from the debt.

III)  The physical separation of the Note and Security Deed affected, if anything, the standing of the noteholder to enforce the Note and the deedholder to enforce the Security Deed, without obtaining the appropriate assignment.  However, any temporary disconnect between the two documents was curable, and in fact was cured by the post-petition assignment which reunited possession of the Note and Security Deed.

IV)  The post-petition assignment did not violate the automatic stay.

## I.  The Note was Secured at Inception

When the Debtors executed the Note to CBE to evidence their purchase money debt on the Property, they also executed the Security Deed to MERS as Grantee, as nominee for CBE, and CBE's successors and assigns. Security Deed, Dckt. No. 28-1, exhibit 2 thereto.  CBE assigned the Note to TBW (a TBW employee completed the assignment pursuant to a power of attorney), and TBW indorsed it in blank and timely recorded the deed. TBW was within the common understanding of the term "successors and assigns," and as such, MERS's designation as nominee for all of Lender's "successors" applied to TBW. MERS was granted rights and powers commensurate with that designation. *See* discussion *supra* Findings of Fact, Part B.

The Security Deed that Debtors granted to MERS meets all the requirements of a deed to secure debt.

A deed to secure debt, often referred to as a security deed or debt deed, is in form an outright conveyance of land by warranty deed to which has been added the following provisions:

1. A statement that it secures payment of a specified indebtedness.

2. A power of attorney authorizing the grantee or his assigns to sell the property upon default, applying the proceeds first to the satisfaction of his debt.

3. A statement that upon full payment of the debt, the grantee or his assigns will cancel the deed or reconvey the

property to the grantor.

Pindar, Georgia Real Estate Law & Procedure § 21-2 (6th ed.) (noting that strictly speaking, an outright warranty deed would be sufficient, but would be less efficient). In the instant case the Security Deed meets all these requirements, and is therefore a valid deed to secure debt in the state of Georgia. Security Deed, Dckt. No. 28-1, exhibit 2 thereto.

A deed to secure debt is an absolute conveyance, and it is governed by its terms. See O.C.G.A. § 44-14-60. In the Security Deed, MERS is named both grantee of the Security Deed and as nominee of the noteholder. See discussion supra Findings of Fact, Part B. "Nominee" is defined as "[a] person designated to act in place of another, usu[ally] in a very limited way." BLACK'S LAW DICTIONARY p. 1076 (8th ed. 2004). In this case, the designation of MERS as nominee and its powers and duties was explicit. MERS was granted specific rights and duties in the Security Deed. See discussion supra Findings of Fact, Part B. The language used in the Security Deed is sufficient to create an agency relationship. Webb v. Day, 273 Ga. App. 491, 492 (2005) ("Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."). As defined in the Security Deed, MERS's status as nominee clearly has all the appearance of an agency. Because MERS can only act on behalf of CBE in regard to the Property, it is a limited agency.

For the Trustee to now assert, despite clear contractual language, that MERS is not truly a grantee, or that its status as nominee somehow renders the Security Deed ineffectual, is disingenuous. The Trustee argues that despite being named as "Grantee" in the Security Deed, MERS is not actually a grantee because it is not an "entity to whom indebtedness is paid on behalf of or by any grantor." Memorandum, Dckt. No. 42, p. 11 (citing O.C.G.A. § 44-14-3(a)(3)). The Trustee's reliance on this definition of "grantee" is misplaced. That definition is clearly qualified by the phrase that "*[a]s used in this Code section*, the term . . . 'Grantee' means heirs, devisees, executors, administrators, successors, transferees or assigns, and any servicing agent or any person or entity to whom indebtedness is paid on behalf of or by any grantor." O.C.G.A. § 44-14-3(a) (emphasis added). That is, as used in Title 44 (Property), Chapter 14 (Mortgages, Conveyances to Secure Debt, and Liens), and *Section 3* (Method and time of cancellation; penalty for failure of proper cancellation), the term "grantee" has that specific definition. It is so defined for the very limited purpose of requiring grantees (as therein described) to timely cancel deeds to secure debt upon payment in full. It is not a definition which applies to any other Code section.

In the instant case, MERS is the Grantee by virtue of the terms of the Security Deed, not dependent upon the terms of O.C.G.A. § 44-14-3. The language of the Security Deed is plain and clear, and the ordinary meaning of "grantee" must be presumed. By the very terms of the Security Deed (signed by Debtors), MERS was designated the Grantee of the Security Deed and the nominee for the Lender on the Note. For the following

reasons, while the Note was executed in favor of CBE and the Security Deed named MERS as Grantee, at the time the Note was executed, it was a fully-secured, first-priority deed to secure debt.

## The Security Deed was Properly Perfected

The parties stipulate that the Security Deed was recorded on November 28, 2006, in the Office of the Clerk of Superior Court of Effingham County, Georgia. Plaintiff's Memorandum, Dckt. No. 42, ¶ 6; Defendant's Facts, Dckt. No. 30, ¶ 5. Georgia law provides that "[e]very deed to secure debt shall be recorded in the county where the land conveyed is located." Because the Property is located in Effingham County, the Security Deed was properly perfected.

## The Security Deed was Never Expressly Released or Cancelled

No cancellation of the Security Deed has been produced, and there has been no suggestion that the debt has been paid in full. Indeed, Debtors scheduled this debt as outstanding when the case was filed. Schedule D, Case No. 10-40181, Dckt. No. 1, p. 25. Georgia law provides that when a conveyance of real property is made via a deed to secure debt, such "conveyance of real or personal property shall pass the title of the property to the grantee until the debt or debts which the conveyance was made to secure shall be fully paid." O.C.G.A. § 44-14-60. Because Debtors have not fully repaid the underlying debt, Debtors are not entitled to have the Security Deed cancelled. *See* Taylor, Bean & Whitaker Mortg.

Corp. v. Brown, 276 Ga. 848 (2003).  Accordingly, the Security Deed remains in full force and effect.


## II. No Other Event Stripped the Security from the Note

The Trustee contends, despite the fact that MERS was named Grantee, as nominee for the Lender and Lender's successors and assigns in the Security Deed, that because MERS has never held any beneficial interest in the Note, the Note and the Security Deed were "split," rendering the Note unsecured.  Complaint, Dckt. No. 1, ¶ ¶ 46-48.  To support this position, the Trustee cites comments to the Restatement (Third) of Property (Mortgages) § 5.4 (1997) (the "Restatement") and a recent case from the Missouri Court of Appeals.  Bellistri v. Ocwen Loan Servicing, LLC, 284 S.W.3d 619 (Mo. App. 2009) (applying Missouri law).


The Trustee cites the comments of the Restatement for the proposition that "[w]hen the right of enforcement of the note and the mortgage are split, the note becomes, as a practical matter, unsecured."  Restatement (Third) of Property (Mortgages) § 5.4 at cmt. a (1997).  The Trustee contends that the "split" occurred because MERS (the security holder) did not hold the Note, and therefore suffered no injury, and that the noteholder had no power to foreclose, because it had no security.  Complaint, Dckt. No. 1, ¶ 47 (citing Restatement (Third) of Property (Mortgages) § 5.4 at cmt. e (1997)).

That comment to the Restatement—as used by the Trustee—is taken out of context and does not reflect the entirety of the substantive rule discussed in the text of the Restatement.[4] That substantive rule states that:

> (a) A transfer of an obligation secured by a mortgage also transfers the mortgage unless the parties to the transfer agree otherwise.
>
> (b) Except as otherwise required by the Uniform Commercial Code, a transfer of a mortgage also transfers the obligation the mortgage secures unless the parties to the transfer agree otherwise.
>
> (c) A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures.

Restatement (Third) of Property (Mortgages) § 5.4 (1997). Reading the comment in conjunction with the accompanying text of the Restatement, it becomes clear that the Restatement does not declare that in the situation before the Court the deed to secure debt becomes unsecured. Rather, it explains *why* the note and the deed must (and do) retain a legal nexus except "on [the] rare occasions [when] a mortgagee will wish to disassociate the obligation and the mortgage, but that result should follow only upon evidence that the parties to the transfer so agreed." Id. at cmt. a. It also explicitly contemplates enforcement by someone (besides the noteholder) in behalf of the noteholder. For these reasons, the

---

[4] Further, it must first be noted that 1) the Restatement is not binding in interpreting Georgia law; 2) the Restatement specifically applies (if at all) by its language to mortgages, not to deeds to secure debt; and 3) the Trustee misreads the comment as an affirmative statement of substantive law.

Restatement, if anything, supports MERS's position in this case.

The Trustee cites <u>Bellistri</u> for the proposition that "[t]he mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." <u>Complaint</u>, Dckt. No. 1, ¶ 48, (citing <u>Bellistri v. Ocwen Loan Servicing, LLC</u>, 284 S.W.3d 619, 623 (Mo. App. 2009)). The precise holding in <u>Bellistri</u> is that because "Ocwen holds neither the promissory note, nor the deed of trust, Ocwen lacks a legally cognizable interest and lacks standing to seek relief from the trial court." <u>Id.</u> at 624. The <u>Bellistri</u> court held that, in Missouri, "[w]hen the holder of the promissory note assigns or transfers the note, the deed of trust is also transferred." <u>Id.</u> at 623. However, in that case, MERS had no authority to assign the note, and attempted to assign the deed of trust without assigning the note. Accordingly, "MERS never held the promissory note, thus its assignment of the deed of trust separate from the note had no force." <u>Id.</u> at 624. <u>Bellistri</u> has since been interpreted in a bankruptcy setting. The United States Bankruptcy Court in the Western District of Missouri noted that:

> In the Missouri Court of Appeals' <u>Bellistri v. Ocwen</u> opinion, the Court did not decide whether the failure to prove assignment of the Note had any impact on the borrower's obligations under the Note and Deed of Trust, because the borrower was not the complaining party. Nor did it decide whether a split had occurred at the inception of the loan at issue there due to the involvement of MERS, the principal argument raised by the Trustee here. And, if such a split did occur, the Court did not decide whether, at some later date, the Note and Deed of Trust could be reunited, such that the holder would then possess

a property interest in the real estate and be able to foreclose in the event of default. Indeed, the Court did not decide that there had been a split at all-just that Ocwen had not shown it held the Note or Deed of Trust, and therefore had not shown that it had a property interest sufficient to challenge the sale.

In re Tucker, 2010 WL 3733916 *3 (W.D. Mo.). Therefore, any differences in Georgia and Missouri law notwithstanding, Bellistri does not inform my decision.

### Transfer of the Security Deed under Georgia Law

Georgia law provides that upon a transfer of a deed to secure debt, the accompanying indebtedness is also transferred. O.C.G.A. § 44-14-64(b). Therefore, there is no separation of the Note and Security Deed as a matter of law resulting from the transfer of the Security Deed.

### Transfer of the Note did not Violate any Understanding of the Parties or Alter the Terms of the Security Deed

The Note expressly provides that "the Lender may transfer [the] Note." Note, Dckt. No. 28-1, exhibit 1 thereto. The Security Deed contemplates the transfer of the Note without limitation on MERS's rights and powers to enforce it. Security Deed, Dckt. No. 28-1, exhibit 2 thereto, ¶ 20. Indeed, as discussed above, the Security Deed provides that the Grantee retains the Lender's right of enforcement, whoever the noteholder may be at any

given moment. *See* discussion *supra* <u>Findings of Fact, Part B</u>. There is no split of the Note and Security Deed as a matter of contract by any transfer of the Note, because the Security Deed expressly contemplates that the Note may be transferred from the original Lender, and that MERS's role as nominee for the Lender extends to each successive assignee.[5]

In <u>Warque v. Taylor, Bean & Whitaker Mortg. Corp. and Mortg. Elec. Registration Sys.</u>, MERS conducted a foreclosure sale pursuant to the power granted it under a similar security deed. Case No. 1:09-CV-01906-ODE (N.D. Ga. July 30, 2010) (Magistrate Judge Hagy) (adopted in its entirety by the District Court, August 18, 2010). Debtors alleged that the sale was wrongful because, *inter alia*, MERS had no right to receive payment on the underlying debt. <u>Id.</u> The court looked to the language of the security deed and held that "the nominee of the lender has the ability to foreclose on a debtor's property even if such nominee does not have a beneficial interest in the note secured by the property." <u>Id.</u> at p. 10. The plaintiff objected to that Final Report and Recommendation, and also asked the District Court to certify the following question to the Georgia Supreme Court: "Whether MERS as a nominee for the original lender and its successors, has the power to foreclose on an existing security deed without the participation of the existing note holder." <u>Warque v. Taylor, Bean & Whitaker Mortg. Corp. and Mortg. Elec. Registration Sys.</u>, Case No. 1:09-CV-1906-ODE-

---

[5] "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." <u>Security Deed</u>, Dckt. No. 28-1, exhibit 2 thereto, ¶ 20.

"Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with the power of sale, the [Property]." <u>Security Deed</u>, Dckt. No. 28-1, exhibit 2 thereto, p. 3.

CCH, p. 5 (August 18, 2010) (Evans, J.). That court declined to certify that question to the Georgia Supreme Court, noting that the question was irrelevant because "the security deed expressly grants MERS the power to foreclose on [the] property." Id.; see also Nicholson v. OneWest Bank, 2010 WL 2732325, *4 (N.D. Ga. 2010); Morgera v. Countrywide Home Loans, Inc., 2010 WL 160348, *8 (E.D. Cal. 2010). I agree. The terms of the Note and Security Deed are clear and will be enforced.

In this case, never did any "split" of the Note and Security Deed occur, either at the inception of the Note and Security Deed, or as a result of the assignments of the Note or the Security Deed, which had the effect of stripping the security from the Note. Trent v. Mortg. Elec. Registration Sys., Inc., 288 Fed. Appx. 571, 572 (11th Cir. 2008) ("Under the mortgage contracts, Mortgage Systems has the legal right to foreclose on the debtors' property."). Under applicable provisions of Georgia law and the terms of the Security Deed, the Note and the Security Deed are inseparable. Cf. In re Huggins, 357 B.R. 180, 184 (Bankr. D. Mass. 2006) (applying Massachusetts law and holding that there is "no disconnection between the note and the mortgage" when MERS is acting as nominee); In re Mortg. Elec. Registration Sys. (MERS) Litig., 2010 WL 4038788, *8 (D. Ariz.) (applying Nevada law and holding that "from the very language of the deeds of trust, to which Plaintiffs agreed in entering into their home loan transaction, MERS is still acting as the nominee for the current holder of the promissory note," and that the deed is enforceable); King v. American Mortg. Network, 2010 WL 3516475, *3 (D. Utah) (holding that MERS, as nominee

under the trust deed, was "clearly authorized to act on behalf of the holder of the Note").

### III.  Any Defect Caused by the Physical Separation has been Cured

Assuming *arguendo*, that there was a problem created by the physical separation of the Security Deed from the Note, that problem vanished post-petition when Ocwen (which had been servicing the Note for Freddie Mac) took possession of the Note (from the custodian), remained the Servicer of the Note, took possession of the Security Deed, and became the record owner of the Security Deed. Nicholson v. OneWest Bank, 2010 WL 2732325, *4 (N.D. Ga.) (noting that because the defendant had possession of both the note and the security deed, "to the extent there was any problem regarding the separation of the Security Deed from the Note, such defect has been cured by [d]efendant"); Marty v. Mortg. Elec. Registration Sys., 2010 WL 4117196, *6 (D. Utah) (holding that any supposed discrepancy between interest under the note and the interest under the trust deed was cured when those two documents were brought together).

### IV.  The Post-Petition Assignment did not Violate the Automatic Stay

When Debtors granted a deed to secure debt to MERS, they made an absolute conveyance of their legal title to the Property, reserving the right to have the Property reconveyed to them upon the payment of the Note. O.C.G.A. § 44-14-60 (A deed to secure debt "shall be held by the courts to be an absolute conveyance, with the right reserved by the grantor to have the property reconveyed to him upon the payment of the debt . . . ."). Any

post-petition transfer of the Security Deed did not violate the automatic stay of 11 U.S.C. § 362. Because Debtors' only interests in the Property were the right of possession and the right to have the Security Deed reconveyed upon repayment, they had no interest in the Security Deed itself at the time of any post-petition transfer. In re Halabi, 184 F.3d 1335, 1337 (11th Cir. 1999) ("[T]he assignment of the mortgage, once the original grant by the mortgagor to the mortgagee has been perfected, does not involve a 'transfer of the property of the debtor' that would activate the Trustee's strong-arm powers under § 544."); Turner v. GMAC Mortg., 2006 WL 658978 (Bankr. N.D. Ga.) (holding that "the postpetition assignment of the note and deed to secure debt . . . was not a transaction involving property of the estate and thus no provision of the Bankruptcy Code was implicated") (citing Halabi). I further note that Bankruptcy Rule 3001(e) specifically contemplates the transfer of claims, a frequent and routine event in cases throughout the country. The transfer of this Note and Security Deed is not substantively different from the transfer of a claim. The post-petition transfers did not violate the automatic stay.

## CONCLUSION

Though the underlying facts are complex, even byzantine, in the final analysis, the answer to the Trustee's challenge boils down to a rather simple "plain meaning" interpretation of the contract. Debtors agreed that MERS was the Grantee, as nominee for CBE, its successors and assigns. The Security Deed so provided, and the Trustee now seeks to avoid the Security Deed on the ground that the Note and Security Deed were "split." Such

a finding would not only be contrary to the terms of the Security Deed, the Note, and Georgia law, but it would also elevate form over substance.

Even analyzing the evidence in the light most favorable to the Trustee, I hold that there is no genuine issue as to any material fact. The Note and the Security Deed were not "split." They were executed together at inception and remain linked via the language in the documents that contemplate the agency relationship formed by the designation of MERS as nominee. Defendants have carried their evidentiary burden and Plaintiffs have failed to present specific facts that demonstrate that there is a genuine dispute over material facts. Defendants are entitled to judgment as a matter of law.

## O R D E R

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. The Note, secured by the Security Deed, is fully secured.

_____

Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 7th day of February, 2011.

AO 72A
(Rev. 8/82)